Howry, Judge,
delivered the opinion of the Court:
This plaintiff, as a commissioner designated to act in extradition proceedings, presented an account for services claimed to have been rendered according to the scale of fees prescribed by the second section of the act of August 3, 1882 (22 Stat. L., 215), for commissioners in such proceedings. ' After being examined, a portion of the amount claimed was allowed by the Attorney-General, and an account for the amount so allowed was referred to the Secretary of State for payment from the appropriation for fees and costs in extradition cases for the fiscal years stated in the petition, but payment of certain other items was refused. The amount allowed covered the fees prescribed by section 21 of an act approved May 28, 1896 (29 Stat. L., 184, 185). Judgment was rendered in an action brought by the plaintiff in this court against the claim for fees under the act of 1882, principally upon the ground that the later act, fixing a lower scale of fees than those prescribed in the earlier act, operated as a repeal of the act of 1882, and plaintiff’s petition was dismissed (42 C. Cls. R., 35).
Plaintiff now moves for a1 new hearing and asks the court to find the facts as in cases where appeals may be taken “ and file conclusions upon all the questions involved.”
*178 That part of this motion which alleges error for not making written findings of fact because contrary to section 7 of the act of March 3,1887 (1 Supp., E. S., 561), deserves passing notice.
Section 7 relates only to the new jurisdiction created by section 2 of the Tucker Act, and is a part of a code of procedure prescribed for the circuit and district courts. Congress were establishing the practice of those courts in new cases; that of this court was already established. The rules regulating appeals from this court prescribes that there shall be made and filed findings of fact established by the evidence in the nature of a special verdict, but not the evidence establishing them, and a separate statement of the conclusions of law upon said facts on which the court founds its judgement or decree.
These rules have application only where the cause is ap-pealable. Where the cause is not appealable, it is useless to make specific findings, as they are designed only for the presentation of the case to the Supreme Court, if appealed, and are required only by the rules of that court. The practice of finding the facts and filing the same where the judgment is against the Government is necessarily different, because of the right of the Government to appeal irrespective of amount. Where the right of appeal does not exist, the court exercises the right to dismiss, with or without findings, and with an opinion or without one, at discretion.
Despite the plain and emphatic language fixing fees for all commissioners by an act later than that under which fees are here claimed, plaintiff contends that the later act refers to commissioners in the discharge of their ordinary duties, and not to commissioners clothed with authority in cases of extradition under treaty stipulations, because it is argued if it did there would be no provision for the payment of fees earned by extradition commissioners under any treaty or convention other than under treaties with Great Britain and France, inasmuch as these two treaties are named in the last act. Following this is the broad statement of counsel at the argument that commissioners in extradition cases, under treaties with all foreign governments except the two named, would be deprived of their fees if our judgment is to stand.
*179 While it is true that tbe later act prevents prolonged hearings by commissioners and the making of unnecessary accounts in extradition cases where foreign governments have to pay and breaks up the evil practice of delaying justice to prisoners and governments alike, while commissioners are making fees in adjournments from day to day, the act of 1896 does not deprive commissioners in extradition proceedings from collecting from foreign governments, through our own Government, the same fees that are charged where the commissioner acts in the hearing of offenses against the United States. The act of 1896 allows one per diem unless the account shows that the hearing could not be completed in one day, and then one additional per diem is allowable. This rule, where local offenses are charged, seems to apply to extradition proceedings with all foreign governments except France and Great Britain, where “ five dollars a day for the time necessarily employed ” is allowed. In the act of 1882 $5 a day “ for the time necessarily employed ” was allowed for hearing and deciding upon the case of any person charged with crime and arrested under the provisions of any treaty or convention.
Congress must have had a purpose in not carrying into the new act the language of the old, because on the face of the two acts the matter of per diems appears to have been under consideration.
Prior to the act of 1882 commissioners were entitled to the fees prescribed by section 847 of the Revised Statutes. The fees prescribed by that section are the same authorized by section 2 of the act of August" 3, 1882 — under which this plaintiff claims — even to the extent of providing the fees which commissioners should receive when acting in extradition proceedings under certain treaties therein named. Congress, whatever may be said of their purpose, at least apparently knew what they were doing by bringing into the act of 1896 those provisions relating to fees applicable to extradition cases under the treaties with Great Britain and France, and omitting to bring forward the provisions of the act of 1882, thereby fixing per diems by that rule under which the 21 per diems claimed in this action were disallowed.
*180 Section 21 of tbe act of May 28, 1896, adopted part of tbe language of tbe second section of the act of August 2, 1882, and section 847, Revised Statutes, which indicates an intention, we think, to provide an exclusive fee bill for extradition cases and in cases where crimes were charged against the United States, saving the exception provided in the act itself. Otherwise it would not have been declared in the beginning of the section that said commissioners should receive the fees prescribed therein “ and none other.”
If it be true that by the act of 1896 commissioners serving-in extradition cases are compelled to perform without compensation the specific services imposed on them by section 5270 of the Revised Statutes, as argued upon Treasury authority (13 Comp. Dec., 239), then the court could not hesitate to declare that the act of 1896 did not affect the act of 1882. But section 5270, in the requirement for authorized commissioners to issue warrants and hear extradition cases, was supplemented by no language relating to the matter of compensation. Nevertheless, services rendered by commissioners in extradition proceedings before the act of 1882 were compensated by the general provisions of law prescribed by section 847. If the effect of the act of 1896 is that contended for by counsel, the inquiry naturally arises how it has happened that commissioners in extradition proceedings obtained compensation under the general provisions of law antedating the act of 1882, and how it appears that, regardless of a fee bill unprescribed by section 5270, commissioners’ fees in extradition cases are being paid under a fee bill regarded as just to commissioners at home.
It is insisted, however, that the construction of the act of 1896, which limits this commissioner to the fees there prescribed, is a forced construction, and that the later act is merely cumulative of the act of May 28, 1882. This can not be so, because that provision in the second section of the act of 1882 which allowed, according to the old standard fixed by section 847, $5 a day “ for the time necessarily employed ” was not carried forward in the act of 1896, but other provisions of the act of 1882 were taken to the new act, which cut off commissioners acting in extradition proceedings from judging for themselves how long a cause should be given *181 consideration beyond the two days indicated by the change fixed in the new law.
Recurring to that provision in the later act which makes a general fee bill apparently restricted for the service to the fees therein named “ and none other,” the court can hot carve out an exception to the general provision of the law when the statute lays down a general rule applicable to all commissioners where there is no statutory intent or indication that an exception was intended. (Eckloff v. District of Columbia, 135 U. S., 240.) In that case there was before the court a general provision in an act to provide a permanent form of government for the District of Columbia and certain specific provisions and limitations found in earlier statutes. As in this case, there is in the later statute a general provision relating to all United States commissioners and a specific provision in an earlier statute relating to other services in extradition proceedings. The court held that the last statute had become the exclusive law of the case, and Mr. Justice Brewer said:
“The presumption against implied repeal obtaining in the construction of ordinary statutes yields to the inference arising from the subject-matter of legislation.”
Again, section 24 of the act of 1896 declares “ That all acts and portions of acts inconsistent with this act are hereby repealed.” This brings into consideration another rule, and that is that if the later act covers the .whole subject of the earlier, and embraces provisions that plainly show that it was intended as a substitute for the first, it operates as a repeal. (King v. Cornell, 106 U. S., 395.) The effect of a repealing clause declaring that all laws and parts of laws in conflict with the provisions of the act, “ be, and the same are hereby, repealed,” carries the inference that there was an intention to supersede all old acts. This rule was again declared quite recently in most emphatic terms on the general idea that there is no necessity to specifically refer to the prior acts. (O'Conor v. Texas, 202 U. S., 501.) The language of the repealing clause here is too comprehensive and too variant from the act under which the fees in this case were rejected for the court to refuse to give effect to the later act. Especially is this so when Congress made an ex *182 press exception for fees in extradition proceedings for treaties with two foreign governments different from the general fee bill, inasmuch as this shows an intention to apply exceptions for those two governments only.
In making appropriations for the fiscal year ending June 30, 1901, an appropriation was made to enable the Secretary of State' to comply with the requirements of the fourth section of the act of 1882 (31 Stats., 63). This would seem to be a legislative interpretation and to indicate that the act of 1882 was still in force. Of course, the fourth section was continued in force. But recurring to this act, it will be observed that no mention is made of the second section or of any other except the fourth, and in looking to its phraseology, we find it was required of the Secretary of State to make payment out of the appropriation and to include witness fees and costs of every nature in cases of extradition, including the fees of the commissioner after such fees were certified to the Secretary. Then reimbursement was to follow from the foreign government by whom the proceedings were instituted.
Nothing, however, is said in the appropriation act to indicate that the fees provided by section 2 had not been superseded by the act of 1896 and nothing to show that the fees provided in the later act were not to stand. Besides, legislative interpretation is not to be gathered from general appropriation acts used in a succeeding Congress unless the language is plain and the intention clear.
This case is not intended to charge an abuse of power on the part of this commissioner in continuing hearings for twenty-one days at $5 a day. The account, however, does afford good and sufficient reason for the action of Congress in cutting off the right of a commissioner to prolong profitable hearings in extradition cases exactly as in those cases where offenses are charged against the Government. Under the present statute, operative for both classes of cases, commissioners are prevented from making per diems from day to day for merely taking recognizances or examining into the sufficiency of sureties after an arrest on a bench warrant or in those cases where a defendant is in custody under the process or order of a court of record.
*183 The court is constrained to refuse the urgent request of counsel to so change its judgment as to permit an appeal because of supposed doubts of the correctness of the original conclusion. It would be unfair to an overburdened Supreme Court for this tribunal to evade the duty imposed upon it by law to finally dispose of cases out of the class of .appeals as it does in cases subject to appeal. Such a practice would make of this court a way station merely and convert the supreme tribunal into one of original jurisdiction for many cases never intended to go there.
Regardless of our decision on the main question, if there was error disallowing the fees now demanded claimant can not recover because he accepted the fees allowed and made no objection to the action taken in stating his account under the act of 1896, and made no protest or demand for any additional sum when he accepted payment. Mexico, having reimbursed our own Government, could not be expected to pay anything more, and certainly it would put the United States in an awkward position to present another account for the same service to the foreign government in interest. And yet unless our own Government did present another account the alternative would be upon the United States to pay plaintiff from its treasury for services performed in behalf of Mexico should this court render a judgment in plaintiff’s favor. Thus, in this particular case plaintiff’s conduct operated as an estoppel in bar of any further claim on his part.
Motion denied.